IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CT-3182-FL

ROGER LEE DEAL, SR., )
)
      Plaintiff, )
)
v. ) ORDER
)
CENTRAL PRISON HOSPITAL; DR. )
GABRIEL KYEREMATEN; and )
NURSE SAMUELS,[1] )
)
      Defendants. )

This matter comes before the court on the motion for summary judgment (DE # 39) pursuant to Federal Rule of Civil Procedure 56 and motion for leave to file excess pages (DE # 38) of defendant Dr. Gabriel Kyerematen ("Kyerematen"). Plaintiff did not respond to Kyerematen's motions. In this posture, the issues raised are ripe for review. For the following reasons, the court grants Kyerematen's motions.

## STATEMENT OF THE CASE

On November 9, 2009, plaintiff, a state inmate, brought this action pursuant to 42 U.S.C. § 1983, against Central Prison Hospital ("CPH"), Nurse Samuels ("Samuels"), and Kyerematen, alleging Samuels and Kyerematen acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Plaintiff additionally alleged

---

[1] Plaintiff incorrectly refers to this defendant as Nurse Samuals. The court hereinafter will refer to her by her correct name Nurse Samuels.

a state law claim for negligence. Plaintiff's complaint sought compensatory damages, declaratory judgment, and injunctive relief.

The court subsequently conducted a frivolity review, and dismissed plaintiff's claim against CPH for failure to state a claim. On June 10, 2010, Samuels moved for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies for his claim against her before filing this action. On June 11, 2010, Kyerematen moved to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted for his Eighth Amendment deliberate indifference claim and that plaintiff's state law negligence claim should be dismissed for failure to comply with North Carolina Rule of Civil Procedure 9(j). Kyerematen also moved to dismiss plaintiff's request for injunctive relief. The court subsequently granted Samuels' motion and dismissed plaintiff's claim against her without prejudice.[2] The court, however, granted Kyerematen's motion only as to plaintiff's state law medical malpractice claim and his claim for injunctive relief. The court denied the remainder of Kyerematen's motion.

On February 1, 2011, the court issued its initial order regarding planning and scheduling. Kyerematen objected and requested a protective order prohibiting discovery until after the court made a determination on his qualified immunity defense. The court then allowed Kyerematen the opportunity to raise his qualified immunity defense in the form of a proper motion. On April 28, 2011, Kyerematen filed a motion for summary judgment arguing that he did not violate plaintiff's constitutional rights. Although he was notified of Kyerematen's motion, plaintiff did not respond.

---

[2] On March 7, 2011, plaintiff attempted to amend his complaint to re-allege his claim against Samuels, and submitted documentation reflecting that he had begun the North Carolina Department of Correction's administrative procedure for his claim. The court denied plaintiff's motion as futile because plaintiff still failed to demonstrate that he exhausted his administrative remedies prior to filing this action.

2

Case 5:09-ct-03182-FL   Document 47   Filed 02/01/12   Page 2 of 11

## STATEMENT OF FACTS

On December 15, 2008, Dr. Frederick Benedict ("Dr. Benedict") performed surgery on plaintiff to repair his right prosthetic hip.[3] Kyerematen Aff. ¶ 7 and Ex. D. Plaintiff's surgery included a revision of his right acetabular component, removal of several broken screws and debridement (removal of infected tissue) of his right infected trochanteric bursitis (inflamation of the bursa which is a fluid filled sac near the joint) and deep hip infection. Id. Following surgery, plaintiff attended a post-operative infectious disease consultation with Dr. Brown to treat his deep hip infection. Id. Dr. Brown recommended a six-week course of intravenous ("IV") Vancomycin and IV Ceftriaxone to treat the infection. Id. Dr. Benedict also recommended that plaintiff be prescribed Percocet and Tramadol or Ultram for pain management. Id. While at Duke Raleigh Hospital, plaintiff was prescribed the following: (1) Neurontin, 600 mg, two tablets three times per day; (2) Elavil, 25 mg at bedtime; (3) Percocet, 10/325 mg, every four hours, as needed for severe pain only; and (4) Ultram, two tablets, four times per day. Id. ¶ 8.

On December 18, 2008, plaintiff was transferred to CPH for his intravenous antibiotic treatment. Id. ¶ 9 and Ex. E. Upon admission to CPH, plaintiff was examined by Dr. Julius Aitsebaomo ("Dr. Aitsebaomo"). Id. Dr. Aitsebaomo noted that plaintiff complained of chronic right hip pain, but otherwise reported normal results from plaintiff's examination. Id. Dr. Aitsebaomo diagnosed plaintiff with the following: (1) recurrent right prosthetic hip dislocation with right hip abscess status post (s/p) revision of loose femoral components and right hip abscess debridement; (2) a motor vehicle accident with pelvic fracture in 1983, status post open reduction

---

[3] Plaintiff had a history of hip-related treatment, prior to his surgery, which is set forth in detail in Kyerematen's affidavit. See Kyerematen Aff. ¶ 6.

3

and internal fixation, right total hip arthropolasty (THA) (reconstruction or replacement of malformed or degenerated joint) in 1985, THA revision in 1995 with residual foot drop complication (difficulty or inability to move ankle or toes upward); (3) gastroesophageal reflux disease (GERD); (4) tobacco dependence; and (5) chronic back pain status post two lumbar spine surgeries. Id. Dr. Aitsebaomo noted that plaintiff was to follow up with the orthopaedic clinic. Id. Dr. Aitsebaomo also recommended a consultation with a physical therapist. Id. Finally, Dr. Aitsebaomo prescribed the following medications: (1) Vancomycin 1.25g, by IV, every twelve (12) hours for six weeks; (2) Ceftriaxone (antibiotic) 2g, by IV, every twelve (12) hours for six weeks; (3) Percocet two tablets, every six hours, as needed for pain; (4) Lovenox 40 mg injection, daily until PT/INR is therapeutic; (5) Coumadin 5 mg, by mouth at bedtime for thirty (30) days; (6) Zantac (treats GERD) 300mg, by mouth, twice per day; (7) Elavil 25 mg, by mouth at bedtime; (8) Colace (stool softener) 100mg, by mouth, twice per day; (9) Doxazosin (treats hypertension) 1 mg, by mouth at bedtime; (10) Effexor XR (antidepressant) 150mg, by mouth at bedtime; and (11) Neurontin 600mg, by mouth, three times per day. Id.

On December 19, 2008, Kyerematen examined plaintiff, and noted normal results. Id. ¶ 10. Kyerematen also noted that plaintiff complained of appropriate post-operative pain. Id. Kyerematen formulated a plan to continue with the current management of plaintiff's IV antibiotics, to continue his deep vein thrombosis prophylaxis with Lovenox and Coumadin, to obtain baseline labs, blood cultures, and to schedule physical therapy. Id.

4

On December 19, 2008 and December 22, 2008, physical therapist Wayne F. Gray ("Gray") saw plaintiff for physical therapy.[4] Id. ¶ 11 and Ex. G. During this time period, Gray noted that plaintiff had residual hip pain, limitation of motion, and was at risk for recurrent dislocation. Id. ¶ 13 and Ex. I. Gray further noted that plaintiff had mild disorientation and his roommates reported that he had been having visual and auditory hallucinations. Id. Although plaintiff was cooperative with Gray, he minimized the condition of his hip and was not adhering to total hip replacement movement and position restrictions. Id. Gray recommended a standby guard to assist plaintiff for two to three more days and also questioned plaintiff's mental health. Id. Gray recommended close observation of plaintiff and continued physical therapy. Id. Additionally, Kyerematen ordered one hundred milligrams (100mg) of Ultram to be taken twice per day for two weeks in response to plaintiff's complaints of residual hip pain. Id.

On December 23, 2008, Dr. Benedict saw plaintiff and noted that his hip revision was well healed without drainage. Id. ¶ 15 and Ex. K. Plaintiff's staples also were removed on this date. Id.

On December 28, 2008, a healthcare provider at CPH submitted a telephone order to renew plaintiff's Percocet prescription. Id. ¶ 17 and Ex. M. The next day, plaintiff saw Gray for physical therapy. Id. ¶ 18 and Ex. N. Gray noted that plaintiff's mental health was improved and that plaintiff displayed no signs of hallucination or being out of contact with reality. Id. Gray did not

---

[4] During this period of time, a healthcare provider ordered one tablet of Percocet 5/325 mg to be taken every six hours, as needed for pain for a period of seven days. Id. ¶ 12 and Ex. H.

note any complaints of pain. Id. On this same date, Kyerematen ordered one Percocet tablet, to be taken as needed up to four times per day, for breakthrough pain.[5] Id. ¶ 19 and Ex. O.

On December 30, 2008, plaintiff saw Gray for physical therapy. Id. ¶ 20 and Ex. P. Plaintiff complained of "grinding" under his skin at the incision site and above the greater trochanter (upper, outside portion of the femur bone) on his left hip. Id. Gray palpitated the area and noted the area was sunken with 3-5/10 subcutaneous crepitation (a grating sensation) and questioned whether there was wound dehiscence (disruption of the surface of the wound). Id. Gray also noted minimal edema, but did not note any complaints of pain. Id. Gray recommended that plaintiff see a physician for his wound. Id. Kyerematen then reviewed plaintiff's lab cultures for his wound, and found normal results. Id. Plaintiff additionally saw a healthcare providers at CPH, who did not note any abnormalities in the wound care record. Id.

Plaintiff attended physical therapy appointments with Gray on January 2, 2009, January 5, 2009, and on January 7, 2009. Id. ¶¶ 21, 23, 25 and Exs. Q, S. During these appointments, plaintiff complained of mild to moderate pain that tended to be decreasing. Id. ¶ 25. Plaintiff additionally expressed to Gray a desire to be transferred to his "camp" or to Maury Correctional Institution ("Maury"), to be treated in an outpatient setting by a Maury physician. Id. ¶ 25 and Ex. S.

On January 7, 2009, Kyerematen saw plaintiff in the course of his hospital rounds. Id. ¶ 26 and Ex. T. Plaintiff complained to Kyerematen of chronic lower back pain and requested to be discharged from CPH and transferred to Maury within two weeks to attend to legal matters. Id. Kyerematen informed plaintiff that Maury was not adequately equipped to accommodate plaintiff's

---

[5] Kyerematen notes that breakthrough pain is pain that occurs between regularly scheduled doses of pain medication. Id.

6

antibiotic treatment. Id. Further, Kyerematen noted that plaintiff had refused IV antibiotics since the morning of January 7, 2009, and that plaintiff's recent lab reports indicated that plaintiff medically was stable. Id. At the conclusion of his examination, Kyerematen ordered the following medications: (1) Vancomycin to 1 g, IV every twelve hours; (2) Ultram 50 mg at bedtime for two weeks; (3) decreased plaintiff's Percocet to one tablet three times per day, as needed for breakthrough pain for two weeks; and (4) increased plaintiff's Elavil to 50mg at bedtime for one month to control pain. Id.

On January 8, 2009, plaintiff saw Dr. Benedict's partner, Dr. Lee Harold Diehl ("Dr. Diehl"), for an orthopedic consultation. Id. ¶ 27 and Ex. U. Plaintiff complained to Dr. Diehl of mild-groin pain with standing, pivot, and ambulation. Id. Dr. Diehl noted plaintiff's incision was healing normally, that plaintiff ambulated with a cane, and that plaintiff was in no apparent distress. Id. Dr. Diehl recommended that plaintiff complete two more weeks of IV antibiotic treatment. Id. Diehl stated that plaintiff could complete his treatment at CPH or at Maury, if his treatment could be accommodated. Id. Finally, Dr. Diehl ordered Tramadol (Ultram) (100 mg) three times per day. Id. Kyerematen co-signed Dr. Diehl's order. Id.

Plaintiff's treatment continued, and on January 17, 2009, Kyerematen co-signed the following order for medications: (1) Neurontin 600mg, three times per day; (2) Coumadin 5 mg, everyday at bedtime; (3) Zantac 300mg twice per day; (4) Colace 100mg twice per day; (5) Doxazosin (prostate medication) 1 mg, everyday at bedtime; and (6) Effexor XR 150Mg, everyday at bedtime. Id. Then, on January 20, 2009, Kyerematen co-signed an order for Percocet, prescribing one tablet three times per day for breakthrough pain for two weeks. Id. ¶ 30 and Ex. X.

7

Kyerematen saw plaintiff for the last time on January 21, 2009. Id. ¶ 31 and Ex. Y. Kyerematen examined plaintiff and noted that the exam was status quo and that there were no abnormalities in his condition. Id. Kyerematen also noted Dr. Diehl's recommendation that plaintiff's IV treatment be completed on January 22, 2009, and that he subsequently be discharged. Id. On the same date, plaintiff attended a physical therapy appointment with Gray. Id. No complaints of pain, grinding, or incision abnormalities were noted. Id.

On January 23, 2009, plaintiff was discharged from CPH and transferred to Maury. Id. ¶ 32. Kyerematen did not treat plaintiff after he was discharged from CPH. Id. Among plaintiff's discharge instructions included an order for the following medications: (1) Neurontin 600mg, by mouth, three times per day; (2) Zantac 300 mg, by mouth twice per day; (3) Colace 100mg, by mouth, twice per day; (4) Cardura 1mg, by mouth, every bedtime; (4) Effexor XR 150mg, by mouth, every bedtime; (6) Ultram 100mg, by mouth, three times per day; (7) Elevil 50mg, by mouth every bedtime; (8) Flexeril 10mg, by mouth, three times per day, as needed; and (9) Debrox Otic, 4 drops each ear twice per day, for four days. Id.

## DISCUSSION

A.  Summary Judgment

1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

8

nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

   2.   Analysis

To state a claim for relief under the Eighth Amendment of the United States Constitution, a plaintiff must establish that a prison official was deliberately indifferent to a serious condition, medical need, or risk of harm. See Short v. Smoot, 436 F.3d 422, 427 (4th Cir. 2006). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious'"–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" See Strickler, 989 F.2d at 1379 (quotations omitted).

Assuming without deciding that plaintiff is able to satisfy the objective prong of the Eighth Amendment test, his claim still fails because he is not able to establish the second prong–that defendants acted with deliberate indifference. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious

9

condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). A disagreement between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Here, plaintiff alleges that Kyerematen violated his Eighth Amendment rights because he refused to provide him with adequate pain relief following his hip surgery. Plaintiff further alleges that Kyerematen drastically reduced his pain medication which caused his pre-existing foot drop and resulting nerve damage in his leg to intensify, causing back pain. Plaintiff's medical records, however, refute plaintiff's allegations of deliberate indifference. Rather, plaintiff's medical records reflect that he was seen by medical staff on an almost daily basis and that his medical condition was closely monitored. The records further reflect that Kyerematen examined plaintiff on three occasions and wrote or co-signed fourteen (14) orders for medication and treatment. The records further reflect that Kyerematen was responsive to plaintiff and provided pain medication when plaintiff complained of pain. Plaintiff's medical records do not show that plaintiff's pain medication was drastically reduced at any point in time. The above-stated facts do not support the conclusion that Kyerematen knowingly disregarded plaintiff's serious medical needs, and plaintiff has not presented any evidence to the contrary. Instead, these facts demonstrate that plaintiff disagreed with defendants' treatment of his back and hip pain. However, as stated, a disagreement between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright, 766 F.2d at 849.

10

Based upon the foregoing, plaintiff has not established that defendants' treatment of his back and hip pain violated his Eighth Amendment rights, and plaintiff is unable to establish the subjective prong of the <u>Strickler</u> test. Because plaintiff is unable to establish the subjective prong of the <u>Strickler</u> test, he is unable to establish an Eighth Amendment claim. The court notes that Kyerematen also argued for qualified immunity, but finds it unnecessary to reach that alternative argument.

## CONCLUSION

Based upon the foregoing, and for good cause shown, Kyerematen's motion for leave to file excess pages (DE #38) is GRANTED. Kyerematen's motion for summary judgment (DE # 39) also is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 31st day of January, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge

11